UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LARRY C. SCHUBBE,

                Plaintiff,

                           **REPORT AND RECOMMENDATION**

    v.
                           14-CV-531S

DERRICK CORPORATION,

                Defendant.

---

**I.    INTRODUCTION**

Chief Judge Skretny referred this case to this Court under 28 U.S.C. § 636. (Dkt. No. 12.) Pending before the Court is a motion (Dkt. Nos. 11, 24) by defendant Derrick Corporation to dismiss the amended complaint of plaintiff Larry Schubbe ("Schubbe") under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Schubbe claims that defendant regarded him as an alcoholic and subjected him to suspension, unnecessary drug and alcohol testing, changes in work assignments, and ultimately termination as a result. Schubbe alleges that defendant's conduct violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654; and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290–301. Defendant urges dismissal on the basis that it disciplined

and fired Schubbe for misconduct, and that other events that he alleges do not rise to the level of adverse actions that warrant a remedy.

The Court held oral argument on February 24, 2015. For the reasons below, the Court respectfully recommends granting defendant's motion.

## II.   BACKGROUND

This case concerns allegations that defendant targeted Schubbe for harassment and intimidation after it perceived that he was an alcoholic. According to the amended complaint, defendant designs and manufactures equipment used in mining and drilling and employs over 600 people. Schubbe is 55 years old and worked for defendant for over 18 years. Subtracting 18 years from Schubbe's May 6, 2014 termination date, Schubbe appears to have begun working for defendant around 1996. The amended complaint contains no information about Schubbe's employment history between 1996 and 2012, except to note briefly that Schubbe began in the welding department and worked his way up to complex repair work with overtime opportunities by 2012. The amended complaint says nothing about any flexibility that supervisors had in assigning employees to different tasks or departments. The amended complaint also says nothing about any drug or alcohol policies that defendant had, including when and how defendant might require drug and alcohol testing for its employees.

The events that gave rise to plaintiff's action allegedly began in September 2012. Schubbe suffered an unspecified injury at work that month, missed two

days, and then returned to work. The amended complaint appears to list two overlapping reasons why Schubbe missed two days. Defendant told Schubbe the day after the injury that he could not return until he was medically cleared to do so, and the process of medical evaluation and clearance seems to have taken a day. At the same time, defendant "suspended plaintiff for failure to take a drug or alcohol test immediately after the injury at work." (Dkt. No. 22 at 2 ¶ 15.) Schubbe pleads that defendant never ordered him to take a drug or alcohol test at the time of the injury, but Schubbe does not place this allegation in the context of any company policies regarding drug and alcohol testing. When Schubbe returned to work, he complained to defendant about the demand for alcohol and drug testing. "Shortly after plaintiff complained about defendant's demand that plaintiff be screened for alcohol and drugs, defendant terminated plaintiff's son. Defendant claimed that this termination was based on layoff." (*Id.* at 3 ¶ 21.) Schubbe asserts that defendant "terminated plaintiff's son as retaliation against plaintiff despite the fact that defendant kept less senior workers in the department." (*Id.* ¶ 22.) This assertion in the amended complaint lacks context such as what Schubbe's son did on the job, which department is being referenced, exactly when the termination occurred, and whether any supposed layoff affected any other employees.

Schubbe's return to work in September 2012 also brought about a change in his work duties. Schubbe previously performed mechanical and electrical

repair work. After Schubbe returned, defendant assigned him to a tool repair area apparently nicknamed the "cage." Schubbe does not plead whether any particular company policies applied to work in the tool repair area. Nonetheless, Schubbe pleads that defendant became "hypervigilant" about supervising him in the tool repair area, even to the point of challenging his use of the restroom. When Schubbe had no assignments to perform in the tool repair area, defendant either directed him to stay there anyway or deployed him to labor-intensive and menial tasks such as installing drain tile; painting on a roof in June 2013; installing plastic slats in a chain-link fence; and unplugging toilets. Schubbe lost opportunities for overtime because the tool repair area offered none. In November 2013, defendant moved Schubbe to a job assignment involving motor assembly, which Schubbe describes as both physically intensive and requiring fine motor skills.

During the last two years of his employment, Schubbe endured several disciplinary actions that bear on this case. As noted above, defendant suspended Schubbe in September 2012 for not undergoing drug and alcohol testing at the time of his injury. Defendant suspended Schubbe on October 22, 2012 for falling asleep in the tool repair area. Defendant directed Schubbe to undergo alcohol and drug testing that day. Schubbe did so and returned to work the same day but does not say what the result was. Defendant allegedly told Schubbe that he would remain permanently suspended until he enrolled in an

alcohol or drug rehabilitation program, but Schubbe does not plead any context or any proposed theory as to why falling asleep on the job would have anything to do with alcohol or drugs, let alone rehabilitation. Schubbe also does not plead what became of the threat of permanent suspension given that he also appears to have returned to work the same day when he fell asleep. On May 2, 2014, Schubbe injured his wrist on the job, took the weekend off, and returned to work Monday morning, May 5, 2014. That morning, defendant directed Schubbe to undergo a portable breath test for alcohol. Schubbe pleads that he took the test twice and that a doctor for defendant "fumbled" with the breath test device, but that the breath test did detect the presence of alcohol. Schubbe denies "intoxication" but does not deny the positive breath test result. The positive breath test result led to a letter, dated May 13, 2014, from defendant to Schubbe terminating him. Defendant terminated Schubbe as of May 6, 2014.

Schubbe sought remedies for the events leading to his termination once it occurred. On July 24, 2013, Schubbe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). In a letter dated April 3, 2014, the EEOC informed Schubbe that "[t]he evidence uncovered in this investigation fails to show any complaint of employment discrimination made to Respondent against which they could retaliate. With regard to the medical exam (alcohol test) and your suspension, the evidence shows that Respondent submitted you to that exam because of reasonable concern caused by your behavior at work; and

5

since you failed that exam, Respondent had a legitimate, non-discriminatory reason to suspend you." (Dkt. No. 24-6 at 1.) The EEOC issued a Dismissal and Notice of Rights the same day. (Dkt. No. 24-5.) Schubbe filed his original complaint on July 1, 2014. After obtaining permission from the Court to make amendments, Schubbe filed his amended complaint on October 31, 2014. The amended complaint recites the events of Schubbe's last two years of employment as noted above. The amended complaint also mentions four former coworkers by name who supposedly have a history of alcohol abuse but who nonetheless have remained employed with defendant. The amended complaint proceeds to list seven claims. In the first three claims, Schubbe accuses defendant of discrimination, retaliation, and a hostile work environment in violation of the ADA. Schubbe asserts that defendant perceived him as having the disability of alcoholism and subjecting him to several adverse actions based only on that perceived disability: suspensions, unnecessary drug and alcohol tests, medical examinations, treatment, changes in work assignments, denial of overtime, and termination. Schubbe's complaints about drug and alcohol testing and his communications with the EEOC constituted protected activities for which defendant punished him. The adverse actions also created a hostile work environment, according to Schubbe. In the fourth claim, Schubbe accuses defendant of retaliation under the FMLA. Specifically, Schubbe claims that defendant suspended him after his injury in September 2012 to dissuade him

from exercising his rights under the statute, and that the concerns about testing and medical clearance were pretextual only. The fifth, sixth, and seventh claims contain analogous allegations about discrimination, retaliation, and hostile work environment, except under the NYHRL.

Defendant seeks dismissal of the amended complaint on multiple grounds. Defendant argues that any claims based on discrimination should fail because they rest on defendant's reactions to Schubbe's misconduct. According to defendant, each alleged act of discrimination corresponds to a specific instance of failure to submit to drug and alcohol testing, falling asleep at work, or a positive alcohol test. To call workplace discipline discrimination would, in defendant's opinion, mean that employers could not take action against unprofessional behavior on the job. Defendant argues that the claims for hostile work environment fail also because the work reassignments were not severe or pervasive and because lawful requests for drug and alcohol testing cannot constitute harassment. Finally, defendant wants the Court to dismiss the retaliation claims because they challenge permissible drug and alcohol testing and because the work reassignments did not change Schubbe's pay or constitute demotion. To the extent that Schubbe alleges retaliation for the filing of his EEOC complaint, defendant notes that 10 months passed between the filing of the charge and Schubbe's termination. Such a long interval between events, according to defendant, undermines any charge of retaliation.

Schubbe opposes defendant's motion in all respects. Schubbe argues that, for a motion to dismiss, defendant relies too much on inferences or outside information. Schubbe urges the Court to reject defendant's characterizations of "lateral" work reassignments and legitimate, non-discriminatory reasons for termination. Schubbe has pled a discriminatory motive and argues that the Court should assess the amended complaint on its face. With respect to drug and alcohol testing, Schubbe argues that he bears no burden to show generally that drug and alcohol testing is permissible. Rather, Schubbe has pled that defendant imposed testing subjectively and in a discriminatory manner, which would make otherwise legal testing procedures illegal. Finally, Schubbe contends that defendant has ignored allegations in the amended complaint that support his claims and has tried to introduce outside information through its motion papers. Specifically, defendant included with its motion papers what appears to be a transcript of proceedings from Schubbe's appearance before the New York State Unemployment Insurance Appeal Board on August 25, 2014. (Dkt. No. 24-7.) Defendant attempts to draw the Court's attention to the testimony from that proceeding that Schubbe's two breath alcohol tests on May 5, 2014 yielded blood-alcohol levels of 0.139% and 0.155%. (*See id.* at 19–20.) Defendant contends that the rising levels indicated that Schubbe consumed alcohol only a short time before the tests occurred. Schubbe argues that the Court should reject

the transcript in its entirety because Schubbe made no mention of blood-alcohol levels or of the unemployment insurance proceeding in his amended complaint.

### III. DISCUSSION

#### A. *Motions to Dismiss Generally*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Court assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3

(W.D.N.Y. May 9, 2011) (Arcara, *J.*) (internal quotation marks and citation omitted).

As a preliminary matter, the Court must decide whether to consider the Dismissal and Notice of Rights and the April 3, 2014 letter from the EEOC, as well as the transcript of Schubbe's unemployment insurance appeal. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted).

Applying this standard, the Court notes that paragraphs six through eight of the amended complaint refer to the filing of the EEOC complaint, the demand for a "right to sue" letter after 180 days, and the issuance of the Dismissal and Notice of Rights. The Dismissal and Notice of Rights states on its face that "the EEOC is unable to conclude that the information obtained establishes violations of the

statutes." (Dkt. No. 24-5 at 1.) The April 3, 2014 letter that the EEOC also sent mentions that the Dismissal and Notice of Rights was mailed together with that letter. The EEOC papers together are critical in confirming that Schubbe exhausted his administrative remedies and that the Court has jurisdiction over his case. The parties do not dispute the authenticity of the EEOC papers. The Court thus will consider the EEOC papers when considering defendant's motion.

In contrast, the amended complaint does not mention unemployment insurance proceedings at all. The Court does not have the full appeal transcript or documentation of the ultimate outcome of the unemployment insurance application. Any unemployment insurance proceedings naturally would have occurred after Schubbe's termination and would have no bearing on events that occurred before the termination. Perhaps most importantly, whatever happened to Schubbe's unemployment insurance application would not have any collateral-estoppel effect here. "Two questions control whether New York will apply the doctrine of collateral estoppel. First, is the issue to be decided in the second action identical to an issue necessarily decided in the earlier proceeding? Second, did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in that earlier proceeding?" *Hill v. Coca Cola Bottling Co. of N.Y.*, 786 F.2d 550, 552 (2d Cir. 1986) (citations omitted). In Schubbe's unemployment insurance proceedings, the principal issue would have been whether Schubbe, for state purposes, committed misconduct to warrant a

denial of unemployment benefits. Whether Schubbe also committed misconduct to warrant termination, and whether defendant discriminated against Schubbe so as to taint the decision to terminate, are different issues that neither side would have explored fully during the unemployment insurance proceedings. *Cf. Merkl v. Allied Bldg. Prods. Corp.*, No. 09-CV-03085 DLI JMA, 2013 WL 1346032, at *12 (E.D.N.Y. Mar. 28, 2013) (finding that plaintiff could not take a finding of alcoholism from unemployment insurance proceedings and prohibit his former employer from litigating whether it fired him because of alcoholism). The Court accordingly will not consider the transcript of unemployment insurance proceedings that defendant included in its papers.

### B.   *Regarding Schubbe as Disabled*

Of the various issues that the parties have raised, the one that draws the Court's immediate attention is whether defendant has regarded Schubbe as disabled. Schubbe does not allege that he has an actual disability, choosing instead to plead a "regarded as" disability based on defendant's conduct. The choice to plead a "regarded as" disability affects what Schubbe needs to plead. Congress amended the ADA in 2008 to expand the scope of "regarded as" disabilities, eliminating any requirement that an employer perceive an individual as having an impairment that substantially limited a major life activity. *See generally* ADA Amendments Act of 2008, Pub. L. 110–325, 122 Stat. 3553 (Sept. 25, 2008). As the ADA reads now, "[t]he term 'disability' means, with respect to

an individual . . . being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(C). "For purposes of paragraph (1)(C) . . . An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). "Whether an individual is 'regarded as' having a disability is a question of the employer's intent, rather than whether the employee actually has a disability." *Hammond v. Keyspan Energy*, 349 F. App'x 629, 631 (2d Cir. 2009) (summary order) (citation omitted). The legislative history behind the 2008 ADA amendments indicates that Congress wanted to expand "regarded as" liability to respond to adverse employment actions that result from negative stereotypes about disabilities. "Under this bill, the third prong of the disability definition will apply to impairments, not only to disabilities. As such, it does not require a functional test to determine whether an impairment substantially limits a major life activity. This section of the definition of disability was meant to express our understanding that unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are often just as disabling as actual impairments, and our corresponding desire to prohibit discrimination founded on such perceptions." 154 Cong. Rec. S8342-01 (daily ed. Sept. 11. 2008), 2008 WL 4180153 (statement of Sen. Harkin); *see also, e.g., Darcy v. City*

*of N.Y.*, No. 06-CV-2246 RJD, 2011 WL 841375, at *4 (E.D.N.Y. Mar. 8, 2011) ("Obviously, the statute recognizes that perceptions about disabilities carry stigma enough and that, when these perceptions are the motivating force in an employment decision, they often become agents of the improper biases and prejudices associated with the disability (real or imagined) in question.").

Here, even the most favorable inferences from the amended complaint do not generate enough factually plausible information that defendant regarded or stereotyped Schubbe as an alcoholic. Schubbe worked for defendant for over 18 years. Schubbe provides only cursory information about promotions for the first 16 years of his time with defendant. The Court infers, favorably for Schubbe, that his first 16 years with defendant went well and that defendant took no adverse actions against him or regarded him as having any disability. The favorable inference for the first 16 years, however, boomerangs when applied to the last two years because it makes the perception of disability seem abrupt and almost random. After 16 years of promotions, increased responsibility, and successful overtime pay, why would defendant suddenly view Schubbe as an alcoholic who had to be kept in a "cage" all day? Schubbe does not plead any theory that answers that question. Instead, Schubbe pleads only discrete disciplinary actions that occurred in response to discrete instances of misconduct. *Cf. Mitchell v. N.Y.C. Trans. Auth.*, 856 F. Supp. 2d 478, 484 (E.D.N.Y. 2012) ("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to

demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action . . . . Nor is there any evidence that the [defendant] pursued disciplinary action against Plaintiff for any reason other than his violations of the sick leave policies, violations that he does not dispute are covered by the CBA.") (internal quotation marks and citation omitted).  When Schubbe fell asleep on the job, defendant suspended him.  When Schubbe tested positive for alcohol in his system while at work, defendant fired him.  The EEOC's dismissal of Schubbe's allegations to the agency are not binding and carry little weight here.  *See Miller v. Saint-Gobain Advanced Ceramics Corp.*, No. 02-CV-0052E(SR), 2004 WL 941798, at *3 n.8 (W.D.N.Y. Apr. 9, 2004) (Elfvin, *J.*) ("District Courts have substantial discretion with respect to the weight to be accorded an EEOC determination . . . . This Court will accord the EEOC determination no weight because it was sparse and conclusory.  Moreover, it is not clear what the EEOC's investigation involved.") (citations omitted).  Nonetheless, the Court notes that the EEOC found the same relationship between misconduct and discipline.  While Schubbe pleads that defendant had no basis to suspect alcohol or drug abuse for the incidents of October 22, 2012 or May 5, 2014, he does not plead any protest or surprise about the requests for testing.  This lack of protest or surprise undermines Schubbe's credibility when he pleads that, just one month earlier in September 2012, he had no idea that defendant would want him to take a drug or alcohol

test.  Schubbe's allegations about a suspension in September 2012 also do not sound plausible given the chronology that Schubbe has asserted.  Schubbe asserts that defendant suspended him for failure to take a drug or alcohol test immediately after his injury.  Schubbe then asserts that medical clearance was the only barrier to Schubbe's return, and Schubbe indeed returned to work one day after obtaining medical clearance.  In what sense, then, was Schubbe suspended?  The reconciliation of these two assertions that is most favorable to Schubbe would be something to the effect that defendant actually did tell Schubbe that he would be suspended but then quickly backed off and wanted only medical clearance.  Even then, the chronology that Schubbe has asserted and the competing allegations of suspension and medical clearance do not support any claim that defendant regarded Schubbe as disabled and singled him out for it.

If defendant at least had made comments about alcoholism to Schubbe apart from instances of misconduct then Schubbe's "regarded as" contention perhaps would sound more plausible.  *Compare Kelly v. N. Shore-Long Island Health Sys.*, No. 13-CV-1284 JS WDW, 2014 WL 2863020, at *7 (E.D.N.Y. June 22, 2014) (dismissing a disability discrimination complaint in part because "the Complaint stops short of alleging facts from which it can be inferred that anyone at LIJ regarded Plaintiff as a recovering alcoholic") *with Darcy*, 2011 WL 841375, at *1 (denying summary judgment on a regarded-as claim of discrimination

against alcoholism, where, *inter alia*, plaintiff's supervisor told him, "You are a lowly lieutenant and you suffer from the same disease as my brother."). As the amended complaint reads, though, the Court cannot discern how specific responses to specific acts can grow into a general perception of a disability.

Under these circumstances, all of Schubbe's claims under the ADA and NYHRL fail. Schubbe does not have to prove anything at this early stage of the case, of course, but he is not asserting that he actually has a disability and has not pled plausibly that defendant regarded him as disabled. Without a properly pled disability, Schubbe cannot accuse defendant of discriminating against him, creating a hostile work environment, or retaliating against him on the basis of a disability. The Court thus recommends dismissing claims 1–3 and 5–7 in the amended complaint.

**C.**   ***Schubbe's FMLA Claim***

The Court next turns to Schubbe's fourth claim, that he suffered retaliation in violation of the FMLA when he requested leave to address his work injury in September 2012. "In order to make out a prima facie case, he must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004). "However, a complaint asserting an employment discrimination claim, including

an FMLA retaliation claim, need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss.  Instead, to state an FMLA retaliation claim, Plaintiff need only show that his claims are plausible under *Iqbal* and *Twombly*, by pleading facts sufficient to state a claim to relief that is plausible on its face."  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011) (editorial and internal quotation marks and citations omitted).

      Here, Schubbe simply has not pled enough information to maintain a claim for retaliation in September 2012.  The factual background section of the amended complaint does not even mention the FMLA where it describes Schubbe's injury and return to work in September 2012.  Schubbe mentions an invocation of the FMLA only within the fourth claim itself.  In the fourth claim, Schubbe asserts that he requested leave to address his work injury.  Schubbe, however, returned to work just two days after he was injured.  Schubbe obtained medical clearance just one day after the injury.  Schubbe does not plead anywhere how much leave he was considering or whether defendant pressured him into cutting short any contemplated leave.  If Schubbe returned to work that quickly then requesting formal medical leave and being suspended for that request do not sound plausible.  Additionally, and as noted above, the claim that defendant suspended Schubbe does not sound plausible given the immediate request for medical clearance and Schubbe's willingness to obtain clearance and

to return to work just two days after the injury.  Under these circumstances, the Court recommends dismissing this claim as well.

### D.  *Repleading*

At this point, the only issue left for the Court to consider is whether to allow any further repleading.  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.  Although the decision to grant leave to amend is within the discretion of the court, refusal to grant leave must be based on a valid ground.  However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citations omitted).  Here, Schubbe already has submitted one amended complaint.  Schubbe requested leave to amend "to provide the Court and Defendant with a more accurate statement about the events leading to this suit and make an additional claim." (Dkt. No. 17-3 at 2.)  Schubbe presumably has provided that more accurate statement and has not held back on any details that would have helped his allegations.  *Cf. TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) ("Here, Plaintiff already amended its complaint once following Defendant's first motion to dismiss for failure to state a claim.  TechnoMarine failed to resolve its pleading deficiencies in its First Amended Complaint.  In its request to amend this complaint below and in its brief here, moreover, TechnoMarine has entirely failed to specify how it could cure its

pleading deficiencies."). At the same time, the Court does not see how yet another pleading would elevate specific instances of misconduct and discipline to a "regarded-as disability" and discrimination against it. The Court thus will not recommend allowing an opportunity for a second amended complaint.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting defendant's motion to dismiss (Dkt. Nos. 11, 24).

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. See 28 U.S.C. § 636(b)(1); FRCP 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

　　　　　　　　　　　　　　　　　　　　/s Hugh B. Scott
　　　　　　　　　　　　　　　　　　　　HONORABLE HUGH B. SCOTT
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

DATED: March 5, 2015